IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Dennis King and Kareem Morgan, | : | CIVIL ACTION |
| | : | |
|    Plaintiffs | : | 07-704 |
| | : | |
|    v. | : | |
| | : | |
| Ridley Township, Ridley Township | : | |
| Police Department, Detective Scott | : | |
| E. Willoughby, and another Unknown | : | |
| John Doe Police Officer, | : | |
| | : | |
|    Defendants. | : | |

**Joyner, J.**                                                    **July 17, 2007**

### MEMORANDUM AND ORDER

    Presently before the Court is Defendants' Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) (Doc No. 6)[1] and Plaintiffs' opposition (Doc. No. 7).  For the reasons below, the Court: (1) **DISMISSES WITH PREJUDICE** Plaintiffs' claims under the Fifth Amendment, Eighth Amendment, and Due Process Clause of the Fourteenth Amendment of the United States Constitution against all Defendants; (2) **DISMISSES WITHOUT PREJUDICE** any claims arising under the Pennsylvania Constitution against all Defendants; and (3) **DISMISSES WITH PREJUDICE** all claims against the Ridley Township Police Department.

### I. Background

    This is a civil rights action.  On the morning of July 15,

---

    [1] All of the named Defendants joined this motion.

2005,[2] Plaintiffs allege that they were asleep in Plaintiff Dennis King's legally parked vehicle at the Ridley Park Apartments. See Compl. ¶¶ 13, 14.  Mr. King was sleeping in the driver's seat, while Plaintiff Kareem Morgan slept in the passenger's seat. See id. ¶¶ 14, 15.  They were suddenly awoken, however, by the loud rapping of a hard object against the vehicle. See id. ¶ 16.  Without having an opportunity to respond, Mr. King alleges that he felt "the cold steel barrel" of a gun against his temple. Id. at ¶ 17.  And when he began to turn his head, the "officer slid the gun into [his] mouth." Id. at ¶ 18.  The officers then opened the doors of the vehicle and "forcefully" threw both Plaintiffs to the ground where they were handcuffed. See id. at ¶¶ 19, 20.  Mr. King was subsequently made to stand up and a gun was again held to his head. See id. at ¶ 20.  Meanwhile, Mr. Morgan was forced to remain on the ground with a knee to his back and neck. See id. at ¶ 21.  The officers detained Plaintiffs for approximately fifteen minutes, during which time they were subjected to multiple racial epitaphs.  Specifically, they allege that the officers said repeatedly, "[W]e don't like niggers sleeping in a car in [our] county." Id. at ¶¶ 22.  Both Plaintiffs are African American.

On February 21, 2007, Plaintiffs filed suit in this Court

---

[2] Plaintiffs allege that the incident took place sometime between 9:30 and 10:00 a.m. See Compl. ¶ 13.  All citations for the factual background are to paragraphs which appear under "Count I" of Plaintiffs' Complaint.

under 42 U.S.C. § 1983 ("Section 1983"). They allege that the officers' actions violated the Fourth, Fifth, Sixth, Eighth, Fourteenth Amendments of the federal Constitution, as well as the unspecified provisions of the Pennsylvania Constitution.[3] They further allege that Ridley Township violated these same federal and state constitutional provisions by maintaining an "official custom and policy" of "knowingly, recklessly, or with gross negligence fail[ing] to instruct, supervise, control [or] discipline" its police officers that has resulted in citizens' constitutional and statutory rights being violated in multiple ways. See Compl. at Count V, ¶ 3.[4]

Defendants filed their partial motion to dismiss under Rule 12(b)(6) on April 24, 2007. And Plaintiffs responded on May 10,

---

[3] Although Plaintiffs ostensibly filed a "five count" Complaint, it is somewhat difficult to understand how these counts are distinguishable. And so without any meaningful relationship between the Complaint's counts and claims, the Court will simply disregard the former in discussing (and assessing) Plaintiffs' Complaint. (To take just one example, Plaintiffs repeat in each of the five counts that Defendants violated their Fifth and Fourteenth Amendment rights.)

The Court also notes that Plaintiffs repeatedly allege that Defendants' conduct violated Section 1983. See, e.g., Compl. at Count III, ¶ 4. That's not possible, however, because Section 1983 does not create any substantive rights but only confers a statutory right of action. But Plaintiffs may have a claim under 42 U.S.C. § 1985 because they allege Defendants "conspired" to deprive them of their "rights, privileges and immunities guaranteed by the Constitution and laws of the United States . . . ." Compl. at Count V, ¶ 3(g). Defendants do not address this claim in their motion to dismiss.

[4] Defendants correctly note that this appears to be a Monell claim. See D. Memo. at 2; Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). They have not moved to dismiss it, however.

2007.

## II. Standard of Review

In considering a Rule 12(b)(6) motion to dismiss, the district courts must "accept as true the factual allegations in the complaint and [draw] all reasonable inferences" in favor of the plaintiff. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)(internal quotations omitted).[5]  A motion to dismiss may be granted only where the allegations fail to state any claim upon which relief may be granted. See Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  Dismissal is warranted if a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) ("*Twombly*") (rejecting the standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965.

## III. Discussion[6]

*A. Plaintiffs' claims against Ridley Township Police Department*

Defendants argue that all of Plaintiffs' claims against the

---

[5] However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

[6] This court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

Ridley Township Police Department ("Police Department") must be dismissed because it is not a separate entity subject to liability under Section 1983 apart from Ridley Township (which is named as a defendant). They are correct. It is well-established that a "municipality and its police department [are] a single entity for purposes of Section 1983 . . . ." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997); Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 367 (E.D. Pa. 2002) ("In § 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police departments are merely administrative agencies of the municipalities - not separate judicial entities.") (citations omitted); Toth v. Bristol Twp., 215 F. Supp. 2d 595, 599 (E.D. Pa. 2002) ("[A] police department cannot be sued under § 1983 in conjunction with a municipality as it is a local arm, not a separate entity, of the municipality.") (citations omitted). The Court therefore dismisses with prejudice all claims against the Police Department.

*B. Plaintiffs' Fifth Amendment Claims*

Defendants argue that Plaintiffs cannot "assert any claims" under the Fifth Amendment because it "applies only to the federal government and not to municipalities or state governments." D. Memo. at 3 (citing Kelly v. Borough of Sayreville, 107 F.3d 1073, 1076 (3d Cir. 1997)). That's not entirely accurate. It's true that the Fifth Amendment *itself* applies only to the federal

government.  But that isn't the same as saying that a municipality (or other state actor) can't violate an individual's Fifth Amendment rights.[7]  Through the process of incorporation, the Supreme Court has applied several provisions of the Fifth Amendment against the States (and municipalities).[8]  And so, a plaintiff may rightfully allege a municipality violated his or her Fifth Amendment rights (such as the right to be free from self-incrimination).  That's not the case here, however.

Plaintiffs only allege that police officers used excessive and unreasonable force when they were detained.  See, e.g., Compl. ¶¶ 21, 24, 25.  But the use of excessive force during a _seizure_ does not violate the Fifth Amendment.  That's a Fourth Amendment

---

[7]  To make this clearer, consider the Fourth Amendment.  By its terms, it too applies only against the federal government.  But the Supreme Court has made its limitations on government power applicable to the states by incorporating it into the Due Process Clause of the Fourteenth Amendment.  An individual who complains that a city police officer performed an illegal search or seizure, however, doesn't ordinarily view that as a violation of his _Fourteenth_ Amendment rights (although technically that's what it is, e.g., Chavez v. Martinez, 538 U.S. 760, 780 n.1 (Scalia, J., concurring)).  Rather, he (along with courts) conventionally describe that as a violation of his Fourth Amendment rights.  And in that sense, it would be no defense to argue that the Fourth Amendment "does not apply" to municipalities.

[8]  The Supreme Court (primarily during Chief Justice Warren's tenure) has applied multiple provisions of the Bill of Rights against the states by "selectively incorporating" them into the Due Process Clause of the Fourteenth Amendment. See, e.g., Benton v. Maryland, 395 U.S. 784 (1969) (double jeopardy clause); Malloy v. Hogan, 378 U.S. 1 (1964) (self-incrimination clause); Gideon v. Wainwright, 372 U.S. 335 (1963) (right to counsel in all felony cases); Mapp v. Ohio, 367 U.S. 643 (1961) (applying Fourth Amendment's exclusionary rule against the states); Wolf v. Colorado, 338 U.S. 25, 27 (1949) (applying Fourth Amendment's "core" protection of securing one's privacy "against arbitrary intrusion by the police" against the states); DeJonge v. Oregon, 299 U.S. 353 (1937) (freedom of assembly); Near v. Minnesota, 283 U.S. 697 (1931) (freedom of the press).

claim.

Plaintiffs' allegations in fact do not state any Fifth Amendment violations.  Defendants did not violate Plaintiffs' right against self-incrimination because the government can only violate that right at trial - an event which has never occurred in this case. See Chavez, 538 U.S. at 767 (plurality opinion of Thomas, J.) ("Although conduct by law enforcement officials prior to trial may ultimately impair that right, *a constitutional violation occurs only at trial*.") (emphasis in original, citations omitted).  And without a criminal trial, there can't be a double jeopardy violation either. See Sefrass v. United States, 420 U.S. 377, 391-92 (1975).[9]  Finally, Plaintiffs don't have a Section 1983 claim for any alleged *Miranda* violations because the contravention of "prophylactic *Miranda* procedures do[es] not amount to [a] violation[] of the Constitution itself." Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994); see also Hannon v. Sanner, 441 F.3d 635, 637 (8th Cir. 2006) (Appellant's "remedy for an alleged violation of the *Miranda* rule was suppression of evidence . . . not a damages action under § 1983.").

And to the extent Plaintiffs allege that the actions of a

---

[9] More specifically: "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn.  In a non-jury trial, jeopardy attaches when the court begins to hear evidence.  The Court has consistently adhered to the view that jeopardy does not attach . . . until a defendant is 'put to trial before the trier of facts . . . .'" Sefrass, 420 U.S. at 388 (quoting United States v. Jorn, 400 U.S. 470, 479 (1971)).

*municipality* and its police officers deprived them of due process of law, that's a Fourteenth, not Fifth Amendment claim. See, e.g., Kelly, 107 F.3d at 1076 (Kelly's "remaining claims raise due process of law contentions which in this action against a municipality and one of its officials we consider under the Fourteenth Amendment.").[10] The Court therefore dismisses with prejudice Plaintiffs' Fifth Amendment claims.[11]

*C. Plaintiffs' Eighth Amendment Claims*

Plaintiffs' Eighth Amendment[12] claims fail because the "State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." City of Revere v. Massachusetts General Hosp., 463 U.S.

---

[10] See *infra* Part III-D.

[11] Plaintiffs' counsel should revisit his Constitution. That at least this much is necessary is apparent from his uninformed suggestion that Defendants' Fifth Amendment arguments were "completely without merit." P. Memo. at 3. A municipality (or state) transgresses the *Fourteenth Amendment* if it violates a person's due process rights (whether substantive or procedural). See U.S. Const. amend. XIV, § 1 ("[N]or *shall any State* deprive any person of life, liberty, or property, without *due process of law*; nor deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added).

[12] The Supreme Court has partially incorporated the Eighth Amendment against the States. See Cooper Industries v. Leatherman Tool Group, Inc., 532 U.S. 424 (2001) (excessive fines clause); Robinson v. California, 370 U.S. 660 (1962) (cruel and unusual punishment clause); see also Roper v. Simmons, 543 U.S. 541, 560 (2005) ("The Eighth Amendment provides 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' The provision is applicable to the States through the Fourteenth Amendment.") (citations omitted). The Court has not incorporated the excessive bails clause against the States.

239, 245 (1983) (citing Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)); see also Zeidler v. City of Philadelphia, No. 05-6002, 2006 U.S. Dist. LEXIS 45748, at *16 (E.D. Pa. June 27, 2006).  Plaintiffs were never tried and convicted, yet alone charged, by Ridley Township with any crimes.  And so the alleged actions of its officers, which occurred before a (non-existent) criminal adjudication, do not come within the ambit of the Eighth Amendment.  In other words, the propriety of their actions is not tested against Eighth Amendment standards.  The Court therefore dismisses with prejudice Plaintiffs' Eighth Amendment claims.[13]

*D. Plaintiffs' Due Process Claims*

Plaintiffs allege that their due process rights were violated when Defendants detained them in an "unlawful, malicious and grossly reckless" manner. Compl. ¶ 27.  Defendants counter that Plaintiffs can "assert no theory under the Fourteenth Amendment" which would establish that their due process rights were violated. D. Memo. at 4.  The Court agrees.

Generic assertions (like that made by Plaintiffs) of due process violations aren't particularly illuminating.  That's because the Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights. See, e.g.,

---

[13] With respect to the Eighth Amendment claim, Plaintiffs' counsel disdainfully chided Defendants' arguments as "disingenuous." See P. Memo. at 4.  To take such a position, despite Supreme Court decisions clearly to the contrary, illustrates quite vividly his abject failure to conduct even a minimum amount of research before preparing a response.

Albright v. Oliver, 510 U.S. 266, 272 (1994).  And therefore it "guarantee[s] more than [simply] fair process." Washington v. Glucksberg, 521 U.S. 702, 719 (1997).  It also bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986).  A plaintiff who alleges that the government violated his right to due process could therefore be complaining of having been deprived of procedural due process rights[14] or substantive due process rights[15] or both.  In their Complaint, Plaintiffs failed to articulate whether Defendants' conduct violated their procedural or substantive due process rights.  Accordingly, the Court considers whether their allegations describe conduct that would suggest a deprivation of either.

Plaintiffs have no substantive due process claims because the "physically abusive governmental conduct" they complain about is covered by another "specific constitutional provision." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (citing Graham v. Connor, 490 US. 386 (1989)).  Plaintiffs' allegations, if true, that Ridley Township police officers "handcuffed" them, "threw

---

[14] See, e.g., Mathews v. Eldridge, 424 U.S. 319 (1976) (procedural due process case addressing whether the Due Process Clause of the Fifth Amendment requires that a Social Security recipient be afforded an evidentiary hearing prior to the termination of his or her benefits).

[15] See, e.g., Loving v. Virginia, 388 U.S. 1 (1967) (holding Virginia's anti-miscegenation law unconstitutional under both the Equal Protection Clause and substantive component of the Due Process Clause of the Fourteenth Amendment).

them to the ground" and forcibly held them there[16] would plainly be a "seizure" within the meaning of the Fourth Amendment. See Brower v. County of Inyo, 489 U.S. 593, 597 (1989) (a Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*") (emphasis in original).  Plaintiffs' claims therefore must be analyzed "under the standard appropriate to [the Fourth Amendment], not under the rubric of substantive due process." County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (citing Lanier, 520 U.S. at 272 n.7); cf. Glover v. Eight Unknown D.E.A. Agents, 2007 U.S. App. LEXIS 3948, *1 (11th Cir. Feb. 23, 2007) (excessive force claim in which federal agents "stripped [appellant's] clothes off and blasted him with a fire hose for fifteen minutes in below freezing temperatures" is properly analyzed under the Fourth Amendment, not the due process clause); Ciminillo v. Streicher, 434 F.3d 461, 465-66 (6th Cir. 2006).[17]

---

[16] See Compl. ¶¶ 18-21, 23 (allegations describing how Defendant police officers intentionally detained Plaintiffs).

[17] The use of excessive force during a police interrogation for the purpose of eliciting self-incriminating statements (or other inculpatory evidence), which results in a criminal conviction is inconsistent with Fifth and Fourteenth Amendment norms of due process when the methods used are "so brutal and so offensive to human dignity" that they "shock the conscience." Rochin v. California, 342 U.S. 165, 172, 174 (1952) (vacating conviction based on evidence obtained through involuntary stomach pumping).  But here, Plaintiffs do not allege that they were subject to police interrogation (much less convicted as a result of any inculpatory evidence acquired during their July 15, 2005 detention).  And for this reason as well, a due process analysis is inappropriate. See, e.g., James v. York County Police Dep't, 2005 U.S. App. LEXIS 26876, at *9 (3d Cir. Dec. 8, 2005) ("The Due Process Clause of the Fourteenth Amendment protects pretrial detainees, those charged with, but not yet

Plaintiffs don't have any procedural due process claims either.  To prevail on a procedural due process claim, a plaintiff must demonstrate that he has: (1) "been deprived of a property interest" because (2) "of either arbitrary and capricious governmental action or a denial of fair legal process." Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1290 (3d Cir. 1993); see also Combs v. Borough of Avalon, 05-5904, 2007 U.S. Dist. LEXIS 7260, at *8 (D.N.J. Feb. 1, 2007) (citing *Taylor Inv., Ltd.*).[18]  Because Plaintiffs do not identify any "property interest" that Ridley Township deprived them of, they have no procedural due process claims.

*E. Plaintiffs' State Law Claims Against Ridley Township*

Defendants argue that Plaintiffs' claims against Ridley Township, to the extent that they arise under Pennsylvania law, are barred by the Pennsylvania Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, et seq ("PSTCA"). See D. Memo. at 6.  The Court disagrees, but will nevertheless dismiss these claims without

---

convicted of, a crime, see Bell v. Wolfish, 441 U.S. 520, 523 (1979), from the use of excessive force. See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). [Appellant] alleged the use of excessive force during the course of his arrest, before he was charged with, or convicted of, a crime. Therefore, the Eighth and Fourteenth Amendment protections against the use of excessive force were inapplicable.").

[18]  *Taylor, Inv., Ltd.* alternatively described the *prima facie* case for establishing a procedural due process claim as: a plaintiff "must demonstrate the [municipality] deprived [him] of a protected property interest and the state procedures for challenging that deprivation do not comport with due process of law." 983 F.2d at 1293.  Though worded slightly differently, the Court cannot divine a legally relevant distinction between these two formulations.

prejudice.[19]

Plaintiffs' response, again, misses the point. They argue that Defendants' motion to dismiss any state law claims "is without merit" because Plaintiffs "do not premise their claims . . . [on] Pennsylvania legislative law," but only "the United States and Pennsylvania constitutions as well as the Civil Rights Act." P. Memo. at 5. That contention is as astounding as it is ludicrous. Remarkably, Plaintiffs' counsel is blissfully unaware that a claim that Ridley Township violated the Pennsylvania Constitution *is* one arising under state law. In Defendants' view, the question (which Plaintiffs elected not to address) is whether the PSTCA shields a municipality from liability for alleged violations of the Pennsylvania Constitution. The answer to that question is not readily evident.[20]

By raising an immunity defense, Ridley Township presumes

---

[19] In fairness to Defendants, their argument appears premised on the assumption that Plaintiffs were asserting Pennsylvania state tort law claims. That assumption is obviously no longer valid in light of Plaintiffs' representations that they are not pursuing any such claims. See P. Memo. at 5.

In any event, Defendants are correct that under the PSTCA, local agencies are not liable for injuries caused by their own acts or the acts of their employees that constitute "crimes, actual fraud, malice or willful misconduct." 42 Pa.C.S. § 8542(a); Pahle, 227 F. Supp. 2d at 367. Intentional torts are "willful misconduct" under § 8542(a). And so the PSTCA would bar any claims Plaintiffs have under Pennsylvania state law (whether statutory or common law) against Ridley Township because they allege that its police officers acted intentionally and unlawfully. See, e.g., Compl. ¶ 27.

[20] Because Plaintiffs, who are represented by counsel, acknowledge that they are ***not*** asserting any state common law or statutory claims, the Court shall construe their Complaint in a manner consistent with this admission.

that Plaintiffs would have a damages claim for violations of the Pennsylvania Constitution but for the PSTCA.  That's not an assumption the Court is willing to make.  *First*, there is no statutory parallel to Section 1983 under Pennsylvania law, i.e., there is no statutory cause of action which permits individuals to sue Pennsylvania state actors for violations of the Pennsylvania Constitution.[21]  See Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006), petition for allowance denied, 909 A.2d 1291 (Pa. 2006) ("To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution.").  *Second*, there is no common law cause of action, because the Pennsylvania Supreme Court has not recognized a *Bivens*-like[22] claim for violations of the Pennsylvania

---

[21]  And, of course, Section 1983 does not provide for such a cause of action because it affords relief only when a state actor (acting under the color of state law) has violated one's *federal* rights (whether constitutional or statutory).

[22]  Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (holding an implied private right of action for monetary damages action *may* exist against federal actors for violations of the federal constitution when there is no adequate federal remedy); see, e.g., Wilkie v. Robbins, 2007 U.S. LEXIS 8513, at *25-44 (U.S. June 25, 2007) (rejecting *Bivens* remedy to redress injuries based on retaliation by employees of the Bureau of Land Management for the exercise of Fifth Amendment ownership rights because such a cause of action would raise serious administrative problems); Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001) (rejecting that a private federal prison is subject to *Bivens* liability); FDIC v. Meyer, 510 U.S. 471 (1994) (rejecting that federal agencies are susceptible to a *Bivens* claims); Schweiker v. Chilicky, 487 U.S. 412 (1988) (no *Bivens* claim for wrongful denials of Social Security disability benefits); Bush v. Lucas, 462 U.S. 367 (1983) (no *Bivens* claim for First Amendment violations by federal employers).


Constitution. See id; Stambaugh's Air Serv. V. Susquehanna Area Reg'l Airport Auth., 00-660, 2006 U.S. Dist. LEXIS 15844, at *10 (M.D. Pa. Mar. 16, 2006). *Third*, assuming that such a right of action exists, courts are split as to whether the PSTCA immunizes municipalities against such claims.[23] And *fourth*, regardless of PSTCA immunity, and in the absence of any guidance from the Pennsylvania Supreme Court, courts disagree whether there is a private damages action for violations of the Pennsylvania Constitution.[24] In short, the law is unsettled with respect to

---

[23] Compare Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 600 (3d Cir. 1998) ("The City is immune from [Plaintiff]'s claims arising under the equal protection and civil rights sections of the Pennsylvania Constitution because the [PSTCA] grants it immunity from claims for monetary damages except with respect to eight specific types of tortious conduct, none of which is applicable here."); Morris v. Dixon, 03-6819, 2005 U.S. Dist. LEXIS 7059, at *45 (E.D. Pa. Apr. 20, 2005) ("Sgt. Dixon is immune from [Plaintiff]'s claims arising under the Pennsylvania Constitution. PSTCA immunity protects police officers sued in their official capacity."); Agresta v. Goode, 797 F. Supp. 399, 409 (E.D. Pa. 1992) (same) (Pollack, J.) with Montanye v. Wissahickon Sch. Dist., 327 F. Supp. 2d 510, 525 (E.D. Pa. 2004) ("[The PSTCA] applies to tort claims, not [Pennsylvania] constitutional claims."); Coffman v. Wilson, 739 F. Supp. 257, 266 (E.D. Pa. 1990) ("The governmental defendants argue that [Plaintiff's Pennsylvania constitutional claims] are barred by the [PSTCA]. The defendants are wrong. . . . As the title of the [PSTCA] indicates, the immunity granted covers only torts (and, at that, only claims sounding in negligence). Claims arising from violations of the Pennsylvania Constitution may still be raised against local governments.") (citations omitted).

[24] Compare Jones, 890 A.2d at 1216 ("[I]n this case, there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution."); Kaucher v. County of Bucks, 03-1212, 2005 U.S. Dist. LEXIS 1679, at *32 (E.D. Pa. Feb. 7, 2005) ("It has been widely held that the Pennsylvania Constitution does not provide a direct right to damages.") (citing numerous district court opinions) with Montanye, 327 F. Supp. 2d at 525-26 ("Defendants cite no authority for th[e] proposition [that money damages are unavailable for violations of the Pennsylvania Constitution] and advance no arguments to support their position.").

the availability (and scope of) damages actions for violations of the Pennsylvania Constitution.

Thus, there are potentially two "novel or complex" issues of state law the Court would need to address in deciding whether to allow Plaintiffs' claims under the Pennsylvania Constitution to proceed - one, whether a private damages action even exists, and if so, two, whether the PSTCA immunizes a municipality from such claims.  This Court is not the proper forum for resolving these issues;[25] rather, it is for the courts of the Commonwealth of Pennsylvania (and preferably the Pennsylvania Supreme Court) to decide them. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 487 (3d Cir. 1998) (affirming district court's decision not to exercise supplemental jurisdiction over a question of New Jersey constitutional law because it was "better left to the New Jersey courts to determine").  Accordingly, the Court will not exercise supplemental jurisdiction over Plaintiffs' claims (if any) under

---

[25] The *Jones* decision underscores this point.  In *Jones*, the *en banc* Commonwealth Court concluded that there was no implied damages remedy for violations of Article I, Section 8 of the Pennsylvania Constitution. See 890 A.2d at 1208 (Article I, Section 8 is the Pennsylvania Constitution's analog to the federal Fourth Amendment).  But to reach that conclusion required the Commonwealth Court to undertake an exhaustive two-step analysis that considered: (1) to what degree Article I, Section 8's protections were co-extensive with or broader than those of the Fourth Amendment; and (2) the necessity for a court to create a damages remedy for violations of this provision. See Patton v. SEPTA, 06-707, 2007 U.S. Dist. LEXIS 5806, at *23 (E.D. Pa. Jan. 26, 2007) (summarizing *Jones*' analysis).  By engaging in such an analysis, the Commonwealth Court implicitly accepted that a private right of action *may* exist for other provisions of the Pennsylvania Constitution.

the Pennsylvania Constitution and dismisses them without prejudice. See 28 U.S.C. 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim raises a novel or complex issue of State law"); accord Patton v. SEPTA, 06-707, 2007 U.S. Dist. LEXIS 5806, at *22 (E.D. Pa. Jan. 26, 2007) ("Because plaintiff's claims under the Pennsylvania Constitution raise novel or complex issues of state law, I will decline to exercise supplemental jurisdiction over those claims."); Laughman v. Pennsylvania, 05-1033, 2006 U.S. Dist. LEXIS 15841, at *27-28 (M.D. Pa. Mar. 17, 2006); June v. Spano, 05-1495, 2005 U.S. Dist. LEXIS 25681, at *13 (E.D. Pa. Oct. 27, 2005) ("[T]his Court declines to exercise supplemental jurisdiction over Plaintiffs' claim to recover damages for Defendants' alleged violation of Article I, Section 8 [of the Pennsylvania Constitution] because it remains an unsettled issue of state law.").

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion. An appropriate Order follows.[26]

---

[26] The parties' submissions were mediocre at best. They were, especially in the case of Plaintiffs, written and presented in a sloppy manner. Though it should go without saying, the Court expects (and demands) that future submissions will include proper citations and evidence of legal research.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Dennis King and Kareem Morgan, | : | CIVIL ACTION |
| Plaintiffs | : | 07-734 |
| v. | : | |
| Ridley Township, Ridley Township Police Department, Detective Scott E. Willoughby, and another Unknown John Doe Police Officer | : | |
| Defendants | : | |

**ORDER**

AND NOW, this 17th day of July, 2007, the Court **GRANTS** Defendants' Motion for Partial Dismissal under Federal Rule of Civil Procedure 12(b)(6) (Doc No. 6), and **ORDERS** that:

1. Plaintiffs' claims for relief under the Fifth Amendment, Eighth Amendment and Due Process Clause of the Fourteenth Amendments of the United States Constitution are **DISMISSED WITH PREJUDICE** as to all Defendants.

2. Plaintiffs' claims for relief under the Constitution of the Commonwealth of Pennsylvania are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

3. Plaintiffs' claims for relief against Defendant Ridley Township Police Department are **DISMISSED WITH PREJUDICE.**

4. The Clerk of Court update the caption to reflect that the Ridley Township Police Department has been **TERMINATED** as a Defendant in this matter.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.