# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS KING and KAREEM MORGAN, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| POLICE OFFICER STEVE BANNER AND | | |
| SERGEANT JOHN HAMILL, | : | NO. 07-0704 |
| | : | |
| Defendants. | : | |

**L. Felipe Restrepo**
**United States Magistrate Judge**

## MEMORANDUM

On March 4, 2010, after a three-day jury trial, civil judgment was entered in favor of Plaintiff Kareem Morgan against Sergeant John Hamil, and in favor of Plaintiff Dennis King against Officer Steve Banner as to unlawful seizure, and in favor of Defendant Officer Steve Banner as to excessive force. J., Docket No. 47. On March 16, 2010, Defendants filed a motion for a new trial pursuant to Fed. R. Civ. P. 59, alleging several errors of law. Specifically, Defendants allege that the Court erred in instructing the jury regarding unlawful seizure and nominal damages such that the Defendants should get a new trial pursuant to Fed. R. Civ. P. 59. See Def. First Mot. Plaintiffs submitted a letter on March 17, 2010 indicating their non-opposition to Defendants' motion. Def. First Mot. and Pl. Letter, Docket Nos. 49 and 50. Subsequent to Defendants' first motion and Plaintiffs' non-opposition, the Court vacated the verdict and judgment on March 22, 2010. Order, Docket No. 51. Then, on March 26, 2010, the Court ordered that the case was dismissed with prejudice due to a reported settlement between

the parties, pursuant to Rule 41.1(b) of the Local Rules of Civil Procedure. Order, Docket No. 52.

Within a week of dismissal, Defendants filed a motion to void the settlement agreement and for relief from judgment, incorporating their prior arguments and further arguing they should be relieved from judgment and granted a new trial on the basis of alleged perjury newly discovered by Defendants. Def. Second Mot., Docket No. 53. Plaintiffs responded to Defendants' renewed motion on April 20, 2010, Pl. Resp., Docket No. 54, and the Court held an evidentiary hearing on April 23, 2010. See Evidentiary Hr'g Tr., Docket No. 60. Per the Court's request at the evidentiary hearing, the Parties submitted supplemental briefs, the Plaintiffs on May 12, 2010, Pl. Second Resp., Docket No. 58, and the Defendants on May 17, 2010, Def. Third Br., Docket No. 59. Defendants argue that at least one of the plaintiffs knew at the time of trial that Dennis Hill, their corroborating witness, lied about having seen the incident at issue, committing fraud during the course of the investigation and trial such that Defendants should be released from the settlement agreement, pursuant to Pennsylvania law, and granted a new trial, pursuant to Fed. R. Civ. P. 59 and 60(b). See generally Def. Second Mot., Def. Third Mot. Plaintiffs rigorously contest the Defendants' arguments regarding the alleged fraud, and appear to claim that Defendants and/or detectives associated with the Delaware County District Attorney's Office participated in a conspiracy to construct evidence that Mr. Hill and either or both of the Plaintiffs committed perjury during the trial. See generally Pl. Mots.

At the April 23, 2010 evidentiary hearing, the Court heard testimony from the Detectives who investigated the allegation of perjury and from an individual named Demetrius Freeland who was present with Dennis Hill when the Detectives arrived to investigate. See generally

Evid. Hr'g Tr., Apr. 23, 2010.  At this hearing, the Court received into evidence transcripts of interviews with Robert Davis and Dennis Hill conducted by the investigating detectives, marking the transcripts as Exhibits P.T. D-1 and P.T. D-2 respectively.  Evid. Hr'g Tr. 32-33.  The tapes of these interviews were received into evidence as Exhibits P.T. D-1A and P.T. D-2A.  Id.  The Court also received for consideration tapes ("Cassette" and "Microcassette") that contained statements by Dennis Hill and Robert Davis and conversations between Robert Davis and Plaintiffs that Plaintiffs' counsel recorded without Mr. Davis's knowledge.  Id. 139, 141.  The conversations between Plaintiffs and Robert Davis may have occurred on March 29, 2010.  Id. 140-41.  Dennis Hill's statement was recorded in Plaintiff counsel's office on April 1, 2010, id., and Robert Davis's statement was recorded there on April 2, 2010, see Microcassette Tr. No. 2, 2, Apr. 2, 2010.  Defense counsel moved the tapes into evidence, Evid. Hr'g Tr. 142, and on May 6, 2010 provided the Court with six transcripts of the conversations or statements recorded on the two tapes.[1]

In their second motion, Defendants argue that due to perjury by Plaintiffs' corroborating witness, Dennis Hill, they are entitled to relief from judgment (and the settlement agreement) under Rule 60(b) and to a new trial under Rule 59(a).  Def. Br. at 2-3.  Defendants also renew the arguments they made in their initial Motion for a New Trial, notably that the jury should not have been instructed on unlawful seizure or on nominal damages.  Id. at 3.  However, to address the Defendants' contentions, we in fact must determine whether Defendants appropriately argue for

---

[1] At the hearing, the admissibility of all these tapes was discussed several times.  See Evid. Hr'g Tr. 113, 122, 140.  The parties and the Court concluded that the tapes could be considered by the Court for purposes of the evidentiary hearing, but likely would be inadmissible were the matter to go to trial, except perhaps as impeachment evidence.  See id.  The Court has considered all these tapes, notwithstanding our serious concern regarding the legality of counsel's recording of Davis's phone conversations without that individual's knowledge or consent.  See id.; see also 18 Pa.C.S.A. §§ 5703, 5704(4); but see 18 Pa.C.S.A. § 5704(10).

3

relief from the Order dismissing the case pursuant to local rule 41.1(b), as that is the controlling Order in this case.

Local Rule of Civil Procedure 41.1(b) provides: "[w]henever in any civil action counsel shall notify . . . the judge to whom the action is assigned that the issues between the parties have been settled the Clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice, without costs, pursuant to the agreement of counsel. Any such order of dismissal may be vacated, modified, or stricken from the records, for cause shown, upon the application of any party served within ninety (90) days of the entry of such order of dismissal." Local Rule 41.1(b). Reinstatement of a case is controlled by the standards articulated in Federal Rule of Civil Procedure 60(b). Sawka v. Healtheast, Inc., 989 F.2d 138 (3d Cir. 1993). In the Third Circuit, rule 60(b) motions are viewed as "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991).[2] The purpose of Rule 60 is "to strike a proper balance between conflicting principles that litigation must be brought to an end and that justice must be done." Boughner v. Sec. of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir.1978). Accordingly, motions for relief under Rule 60(b) are "directed to the sound discretion of the trial court" and must be considered on equitable principles. Morris v. Schemanski, 2008 WL

---

[2] In addition to 60(b)(3), Defendants argue they should be granted a new trial under rules 59(a), 60(b)(2), and 60(b)(6). See Def. Second Mot. at 2; Def. Third Mot. at 7-8. Defendants filed their renewed motion within the twenty-eight (28) days required of Rule 59(b). Rule 62(b)(2) provides grounds for relief due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Because Defendants filed their renewed motion for a new trial within the 28 days, the Court will consider their motion to be made pursuant to Rule 59(a) and not to Rule 60(b)(2). However, the Court could find no cases in which a dismissal pursuant to Local Rule 41.1(b) was analyzed consistent with Rule 59 instead of Rule 60, as analysis of reinstatement of a case dismissed under Local Rule 41.1(b) is controlled by the standards articulated in Fed. R. Civ. P 60(b). Sawka v. Healtheast, Inc., 989 F.2d 138 (3d Cir. 1993). As such, the Court's analysis is limited to Defendants' argument that they merit a new trial pursuant to Fed. R. Civ. P. 60(b)(3).

2405769, at *3 (E.D. Pa. June 13, 2008) (citing Pierce Assocs., Inc. v. Nemours Foundation, 865 F.2d 530, 548 (3d Cir.1988) (determining that district courts have discretion over Rule 60 motions); United States v. One Toshiba Color Television, 213 F.3d 147, 157 (3d Cir.2000) (finding that equitable doctrines apply to Rule 60 motions)).

Rule 60(b)(3) allows a court to relieve a party from a final judgment due to "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." See Fed. R. Civ. P. 60(b)(3). "The purpose of the rule is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." Favors v. U.S., 2004 WL 1631417, at *2 (E.D. Pa. July 21, 2004) (citing Diaz v. Methodist Hospital, 46 F.3d 492, 496 (5th Cir. 1995)). To sustain the burden of proving fraud and misrepresentation under Rule 60(b)(3), the evidence must be clear and convincing. Brown v. Pa. R.R. Co., 282 F.2d 522, 527 (3d Cir. 1960). Clear and convincing evidence is an intermediate standard of proof, requiring more than the preponderance standard used in most civil cases and less than the "beyond a reasonable doubt" used in most criminal cases. See Addington v. Texas, 441 U.S. 418, 425 (1979). Further, "[i]n order to justify reopening a settlement agreement on the ground of fraud under Rule 60(b)(3), the fraud must be material, that is the moving party must have been prevented, by the misconduct of the other party, from fully and fairly presenting its case." U.S. v. Insurance Co. of North America, 1999 WL 305514, at *2 (E.D. Pa. May 12, 1999) (citing Bandai America Inc v. Bally Midway Mfg. Co., 775 F.2d 70, 73 (3d Cir. 1985)); see also Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983).[3] Parties have been relieved from

---

[3] "Courts consider settlement agreements to be binding contracts," and "ordinary principles of contract law govern settlement agreements." Curiale v. Lenox Group, Inc., 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008). In Pennsylvania, a victim of fraud in the inducement can rescind a contract. Eigen v. Textron Lycoming Reciprocating

5

judgment and granted new trials on account of clear and convincing evidence of fraud or misrepresentation that prevented the opposing party from fully and fairly presenting its case where that party stated one version of events at trial, and later stated a critically different version of those events under oath at a later time. See, e.g., Bethel v. McAllister Brothers, Inc., 1994 WL 328350, at *12-19 (E.D. Pa. July 11, 1994); In re: Vioxx Products Liability Litigation, 489 F. Supp. 2d 587, 591-95 (E.D. La. 2007).

The fraud identified by Defendants as the basis for their motion is the alleged perjury at trial of Kareem Morgan ("Morgan") and Dennis Hill ("Hill"). At trial, Morgan testified on cross examination that Hill called him shortly after the events that allegedly occurred. Trial Tr., 47:24-49:3, 50:20-52:14 (deposition testimony), Mar. 2, 2010. Morgan then testified that he and Hill met to discuss what Hill allegedly saw from the window in LaTonya Johnson's apartment. Id. 53:3-55:19. Hill largely corroborated Morgan's testimony, testifying that he observed the Defendants pull the Plaintiffs out of their car and rough them up, all while yelling at them. See generally Trial Tr., 85:3-102:16, Mar. 3, 2010. Hill also testified that he called Morgan thereafter. Id. 102:18-105:16. Dennis King ("King") testified that he had never met Hill until trial, and that he learned that Hill was a witness from counsel. Id. 4:18-5:9. King testified on

---

Engine Division, 874 A.2d 1179, 1184 (Pa. Super. 2005). A settlement will not be set aside absent a clear showing of fraud. See McDonnell v. Ford Motor Co., 643 A.2d 1102, 1106 (Pa. Super. 1994). Under Pennsylvania law, fraud requires proof of six elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994). An evidentiary hearing is required to determine whether fraud has occurred. See McDonnell, 642 A.2d at 1102. In light of the parallel requirements of demonstrating fraud by clear and convincing evidence to satisfy 60(b)(3) and the requirement that there must be clear showing of fraud to set aside a settlement, the Court is satisfied that only by Defendants' showing of fraud by clear and convincing evidence can the Court vacate the judgment and set aside the settlement agreement as Defendants request. Cf. id.

6

cross that he did not recall Hill calling Morgan, and did not recall Hill meeting with Morgan after the alleged incident. Id. 27:21-28:7.

On March 24, 2010, nearly twenty days after the jury rendered a verdict for Plaintiffs, Robert L. Davis ("Davis") called the Office of the Delaware County District Attorney ("DA") to report that perjury had occurred in a recent trial, notably that Kareem Morgan ("Morgan") had told him all the events had occurred as described with the exception of Hill being present. Evid. Hr'g Tr. 14.

Davis was interviewed at his apartment by Robert Lythgoe ("Lythgoe"), a detective in the special investigations unit of the Criminal Investigation Division in Delaware County, on Friday, March 26, 2010. Evid. Hr'g Tr. 12, 16; Ex. P.T. D-1 at 1. Davis told Lythgoe that he called the Delaware County DA's office to report a fraudulent case involving Morgan. Ex. P.T. D-1 at 2. Davis also told Lythgoe that he had known Morgan about a year at the time of his interview. Id. at 3. Davis did not tell Lythgoe that he and Morgan had a relationship other than being coworkers/friends. Evid. Hr'g Tr. 20. Davis further related that Morgan said that he had a case pending against the Ridley Township Police for brutality, because they called him racial slurs, pulled him out of a car, and slammed him to the ground. Ex. P.T. D-1 at 4. Davis then stated that Morgan said the following to him: he was going to get ten thousand in cash related to the case, see id. at 14; his lawyer stated they did not have a case without a witness, and so they then went and got Hill to state that he was there, id. at 15; everything happened the way he said it happened, except that Hill was not there, id.; and what happened was the most degrading thing that ever happened to him in his life, and he wanted the cops to pay, id. at 17. Davis then stated that Morgan disappeared shortly thereafter, and he saw him only intermittently. See id. at 17-19.

7

Lythgoe's impression was that Davis thought what Morgan did was not right. Evid. Hr'g Tr. 21. Although he acknowledged that in retrospect maybe Davis had reason to be angry with Morgan, Lythgoe testified that at the time it seemed like Davis was just trying to be an honest man. Id. 53. Later that same day, March 26, Lythgoe and Detective Worrilow ("Worrilow"), another member of the Criminal Investigations Unit, id. 74, went to Hill's residence in Philadelphia. Id. 24. The events that ensued are the subject of conflicting accounts, notably the testimony of the officers, the statement made by Hill to the officers, and the later statement by Hill to Plaintiffs' counsel. Hill asserted his Fifth Amendment right not to testify at the hearing. Evid. Hr'g Tr. 107.[4] Lythgoe and Worrilow were not consistent in identifying what they told Hill in order to have him come down to speak with them, notably whether they identified themselves as Delaware County detectives or as police officers, and whether they stated that they wanted to speak about an incident involving the Ridley Township police or about an insurance settlement. See Evid. Hr'g Tr. 24, 58, 76, 97. Hill stated that the detectives knocked and announced themselves as being at his apartment to discuss an insurance claim. See Cassette Tr., No. 3, 4, Apr. 1, 2010. Regardless, Hill came downstairs and they all got into the detectives' car, from which Hill could have exited any time (even if the locks were engaged). See Evid. Hr'g Tr. 25, 60, 77.[5]

---

[4] Hill's testimony and his statements to the detectives are such that had he testified at the evidentiary hearing, it would have become apparent that either he lied under oath during the trial or he lied to the detectives during the course of their investigation. Although it would be permissible for the Court to draw an adverse inference from Hill's assertion of his Fifth Amendment privilege were the inference supported by other, independent evidence, Cavalier Clothes, Inc. v. Major Coat Co., 1995 WL 314511, at *5 (E.D. Pa. May 18, 1995), we decline to do so given lack of sufficient independent evidence. See id.

[5] Hill may have been intoxicated at the time of his interaction with the detectives – he consumed a few alcoholic drinks in the apartment before they arrived. See Cassette Tr., No. 3, 5.

According to Hill, the detectives immediately started telling him that he was not at the Ridley Park Apartments in July 2005, he should not try to lie, and that "it" would be worse for him if he left the car. Cassette Tr., No. 3, 4-5. In the car, Lythgoe stated, "look, Mr. Hill, right now, we know you lied. I said look, you're in this much trouble now; if you keep lying, you're going to be in this much trouble; just tell the truth; telling the truth is not hard." Evid. Hr'g Tr. 25. Lythgoe stated that while he did not tell Hill that lying would result in years in prison, he may have stated it was a federal offense. Id. 63. Hill then told them that he was not in the apartment on the date of the incident, and explained his reasons for testifying as he did. Id. 26, 64, 82-83; P.T. D-2 at 1-3. Specifically, Hill stated that the reason he did this was that the Sergeant involved in the case had previously pulled over Hill and Morgan, using racial slurs and trying to beat Morgan during the car stop. P.T. D-2 at 2. Hill stated that Morgan approached him sometime shortly after the incident at issue in the current lawsuit. Id. at 3.

After having made the above statements to the detectives on March 26, 2010, Hill then made another statement to Glen Morris ("Morris"), Plaintiffs' counsel, on April 1, 2010, in which he largely recanted everything he said in his recorded statement. Hill stated that he was present on July 15th, 2005 and that his testimony was truthful, Cassette Tr., No. 3, 9, but that he felt threatened if he did not state to the detectives that he had lied on the stand. Id. 13-14.[6]

---

[6] The parties dispute whether Hill requested to speak with counsel and the duration of his time in the car with the detectives. Hill stated that he told the detectives that he wanted to speak to an attorney, and that he could not make a recording at that moment and asked for more time. P.T. D-2 at 7. According to the detectives, Hill never asked to speak with an attorney. Evid. Hr'g Tr. 61, 76, 101. Further, the detectives testified that Hill was in the car for twenty to thirty minutes and no more. Evid. Hr'g Tr. 27, 61, 96. Demetrius Freeland, who was in Hill's apartment while Hill met with the detectives, stated that Hill was in the car for forty-five minutes to an hour. Evid. Hr'g Tr. 131.

Between the time of Hill's statement to the detectives and his recantation to Morris, Morris recorded several conversations that occurred between Plaintiffs and Davis, in which Plaintiffs largely challenged Davis's understanding of events. See Evid. Hr'g Tr. 140-41; Cassette Tr., No. 1; Cassette Tr., No. 2; Cassette Tr., No. 4. In a conversation with King, Davis stated several times that Morgan told him everything happened as he stated except that Hill was not present at the incident of July 15, 2005. Cassette Tr., No. 1, 7, 16. Davis stated that the detectives wanted Morgan to admit what he told Davis, and that Lythgoe had said they "they weren't going to give up until somebody broke." Id. 3, 18. At another point, and possibly in another conversation, Davis stated to King that reporting Morgan's fraud was his "way of making sure that Kareem doesn't come back into [his] life because [he is] weak about that." Cassette Tr., No. 4, 3. In a conversation between Davis and Morgan, Morgan told Davis many times that Davis had to stop saying that Morgan lied, and indicated that he would not talk about anything else with Davis until the issue was resolved. See Cassette Tr., No. 2, 1-4. Davis responded that the only way he would know about the fraud is if Morgan told him, which he did while the two of them were in bed together, and that he did not invent the story. See id. 4-5.

After these conversations, on April 2, 2010 Davis made a statement largely recanting everything he stated to Lythgoe and to Plaintiffs in the recorded conversations. This statement was recorded in Plaintiffs' counsel's office, by Plaintiffs' counsel. See generally Microcassette Tr., No. 2. In this statement, Davis states that he was angry with Kareem Morgan because Morgan's actions threatened two jobs that he had. He stated that he told Morgan twice that if Morgan did not return with a particular credit card, he would report Morgan for falsifying testimony. See id. 5. Davis said his statement to the officers that Morgan told him he lied about

10

having a witness present was false. See id. 6. Davis agreed when Morris stated that Morgan never told him that Dennis Hill was not present on July 15 of 2005. Id. 8. Davis then stated that Morgan actually said the police did not know that Dennis was there, that they did not see him, and so Davis thought maybe Hill was not there. Id. 9. Davis then signed an affidavit stating that his report to the Delaware County DA's office was false. See Aff., attached to Pl. Resp. Davis did not appear at the April 23, 2010 hearing. Evid. Hr'g Tr. 107-109.

In summary, Defendants argue that the subsequently-recanted report of Davis, the subsequently-recanted statement of Hill, and the testimony of the two detectives collectively serve as clear and convincing evidence of fraud such that they should be relieved from judgment and granted a new trial, pursuant to Local Rule 41.1(b) and Federal Rule of Civil Procedure 60(b)(3). See generally Def. Mots. The Court reluctantly disagrees with Defendants. While the evidence presented to the Court in the parties' filings, at the evidentiary hearing, and in the transcripts provided certainly paint a murky picture at best of what may or may not have happened, they do not serve as clear and convincing evidence that both Hill and Morgan perjured themselves during the course of trial such that Defendants merit relief from judgment and the grant of a new trial.

Defendants also moved for a trial pursuant to Rule 60(b)(6). See Def. Third Mot. at 7-8. Rule 60(b)(6) is "intended to be a means for accomplishing justice in extraordinary situations." Kock v. Government of the Virgin Islands, 811 F.2d 240, 246 (3d Cir.1987). Relief pursuant to Rule 60(b)(6) is justified where "absent such relief an 'extreme' and 'unexpected' hardship will result." Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir.1977). Further, Rule 60(b)(6) "generally requires that the petitioners make 'a more compelling showing of inequity or

11

hardship' than normally would be required to reopen a case under subsections (1) through (5)." Project Management Institute, Inc. v. Ireland, 144 Fed. Appx. 935, 937 fn.1 (3d Cir. 2005) (quoting Landano v. Rafferty, 897 F.2d 661, 682 (3d Cir.1990).  Because Defendants did not show by clear and convincing evidence that fraud occurred to merit relief from the judgment and the granting of a new trial under 60(b)(3), they cannot succeed under Rule 60(b)(6).  See id.

In light of the above, Defendants' motion for relief from judgment is **DENIED**.  An implementing order follows.